**Aaron J. Tolson, Esq.**
**TOLSON & WAYMENT, PLLC**
**1906 Jennie Lee Dr.**
**Idaho Falls, Idaho, 83404**
**Email: ajt@aaronjtolsonlaw.com**
**Telephone: 208-228-5221**
**Fax: 208-228-5200**
**I.S.B. #6558**

**Attorney for Defendant**

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| **IN RE:  Aaron J. Tolson** ) | |
| ) | **Case No. 4:25-mc-00258-DCN** |
| ) | |
| ) | |
| ) | **Response to Order to Show Cause and** |
| )) | **Request for Hearing** |
| ) | |

**RESPONSE TO ORDER TO SHOW CAUSE, SPECIFIC OBJECTIONS TO BANKRUPTCY COURT MEMORANDUM OF DECISION, AND REQUEST FOR EVIDENTIARY HEARING**

## I. INTRODUCTION

Respondent **Aaron J. Tolson** submits this Response to the **October 6, 2025** Order to Show Cause and **requests an evidentiary hearing** under D. Idaho L. Civ. R. 83.5(b)(4)(B)–(C).

Mr. Tolson **denies** intentional misconduct and disputes that the record supports disbarment. Over roughly **ten years**, he represented Mark and Rozlyn Romriell across multiple matters with **little or no compensation**, based on a **deferred-payment understanding** that fees would be settled upon a final funding event (refinance and/or insurance recovery). Any trust-account errors were **administrative and remediable**, not dishonest; proportionate, corrective relief is at issue rather than career-ending sanction.

## II. REQUEST FOR HEARING (L.Civ.R. 83.5(b)(4)(C))

Respondent requests an **in-person evidentiary hearing** with live testimony from: Respondent and other witnesses. Exhibits will include ledgers, bank statements, communications, engagement/fee documents, CLE certificates, and other documents. Given the seriousness of potential discipline and disputed facts/intent, due process requires a hearing.

## III. SPECIFIC, PARAGRAPHED RESPONSES TO THE MEMORANDUM OF DECISION

### A. Jurisdiction; Power to Sanction

**Position:** No challenge to the District Court's jurisdiction under 28 U.S.C. §§ 157, 1334 or to the Bankruptcy Court's authority to **recommend** discipline. The dispute is **not about authority**, but about **findings and proportionality** and in addition that a case is already in process addressing the fee dispute. Final discipline must follow a full record and hearing before the reviewing judge (and panel if applicable).

### B. Preliminary Motion (denial of Motion to Dismiss)

**Response:** While venue/appropriateness concerns were preserved, Respondent accepts that the Bankruptcy Court could **recommend** discipline. The **evidentiary record is incomplete** and contains credibility conflicts best resolved in the reviewing judge's hearing, not by adopting the R&R wholesale.

### C. Statutory/Inherent Sanction Authority

**Response:** The **sanction** must reflect **intent**, **injury**, and **mitigation**, with **clear and convincing** support. The R&R equates poor accounting and communications lapses with **knowing conversion**; that leap requires factual resolution at hearing.

### D. Local Disciplinary Procedure (D. Idaho L. Civ. R. 83.5)

**Response:** Respondent invokes his rights under subsection (B)–(E): to respond; to a hearing; to propose a remedial outcome; and, if necessary, to panel review after the reviewing judge's proposed determination.

---

### IV. FACT RESPONSES (ROMRIELL MATTERS)

1. **Prior Cases & Fee History.**
   Respondent handled multiple matters since 2016, often without contemporaneous payment, consistent with a **deferred-payment understanding**. Any 2019 fee stipulation (limiting/returning fees) was **honored** and is not evidence of dishonesty; it reflects responsiveness to UST concerns at that time, which were rooted in the Romriell's lack of diligence in responding to factual requests or other actions they took that were inconsistent with acting as a fiduciary to their creditors.

2. **Insurance Case (Berkshire Hathaway).**
   To the extent the R&R suggests misbilling to MKO, Respondent will present testimony clarifying **which entries relate to which client/matter** and will **disallow** any time not properly allocable.

3. **MKO Discussions.**
   In the MKO-related time listed, Respondent will show either (a) it related to the Romriell matters; or (b) it is **withdrawn** from any fee claim. The formal MKO engagement was part of the original fee agreement and is precisely why Respondent collected MKO charges from client funds.

4. **Chapter 11 → 13; $5,000 Retainer; $250/hr; Later Fee Cap.**
   The filed employment terms were not limited to bankruptcy work; **non-bankruptcy** matters (insurance) required different terms and payment from MKO.

5. **Plan Confirmation and Family Refinance.**
   The refinance proceeds were to **fund plan completion and** accomplish **mortgage resolution** (payoff or negotiated resolution). The Trustee quoted **two payoff scenarios**; clients confirmed they wanted the full mortgage resolved. Respondent

sent **$206,000** to the Trustee, then pursued payoff/settlement with the lender. There was no intent to permanently deprive clients of remaining funds; the dispute centers on **timing/documentation** and what each party thought was to occur. Counsel attempted to find common ground and refund a portion of fees in an effort to resolve the case.

6. **Trust Account Entries (Dec. 2023–Feb. 2024).**
   The R&R cites withdrawals from the MKO funds held in trust. Counsel believes the fees were more than earned and in fact further fees were earned an unpaid, and counsel plans to defend this position in the state court action and abide by the decision of the court in that matter.

7. **Client Communications (Jan.–Dec. 2024).**
   Respondent **acknowledges** communication errors and imprecise messages. He denies **intent to mislead** and will present the history showing **ongoing efforts** to finalize the client aims.

8. **Text Messages.**
   These were ongoing attempts at reconciliation. Respondent accepts responsibility for confusion and proposes **corrective conditions** (see § VIII) rather than disbarment.

9. **Invoices (Ex. 232) & Data Integrity Issues.**
   Respondent will **exclude** inconsistent entries from fee claims; and submit to a **neutral review**.

10. **Subpoenaed Docs (Google sheet / hardcopy ledgers).**
    Respondent has produced the **complete bank records** together with an **accounting** the bar investigation and litigation will resolve this.

---

## V. RULE-BY-RULE ANALYSIS & OBJECTIONS

### A. ER 1.2 (Client Objectives) — Objection to Violation Finding

The record reflects **dual client objectives**: complete plan and resolve mortgage, and obtain relief for MKO from either a Qui Tam action against a lender or a Bad Faith Claim against an insurer. Paying the Trustee ($206k) achieved the first. With respect to the second, Respondent pursued payoff/settlement; there is no clear, written client instruction to **immediately** remit all remaining funds **regardless** of payoff accuracy, escrow conditions, or lien-release sequencing. At minimum, **ambiguity** exists that must be resolved at hearing. Any failure here is one of **documentation**, not disobedience.

### B. ER 1.4 (Communication) — Partial Concession; Proportionate Remedy

Respondent accepts that updates should have been **more frequent and formal**; however, **poor communication is not dishonesty**. A proportionate remedy (CLE, monitored practice, written protocols) fits the conduct; **disbarment does not**.

### C. ER 1.15 (Safekeeping) — Objection to "Conversion" Characterization

Funds must remain in trust until **earned** or **undisputed**. Respondent will show (a) a **good-faith belief** that a portion of longstanding, deferred fees were **earned**; (b) **procedural missteps** (notice/consent/timing) rather than intent to convert; (c) immediate **remediation**: independent reconciliation, restoration/escrow of some disputed amounts, and a subsequent agreement. Those steps and the **absence of permanent deprivation** refute "conversion."

### D. ER 8.4(c) (Dishonesty) — Objection

The cited statements arose during reconciliation/lender processing and were **not** made to secure a benefit through deceit. Respondent's subsequent **arrears cure**, foreclosure prevention, and present **escrow/restitution** offer are inconsistent with a dishonest motive.

---

## VI. DISTINGUISHING THE R&R'S AUTHORITIES; PROPORTIONALITY

The R&R leans on cases like **Pangburn**, where the court found **knowing conversion** and **lack of mitigation**. Here, Respondent shows: (1) **no intent** to permanently deprive; (2) **deferred-fee context** across a decade; (3) **remediation** and **restitution with interest**; (4) **practice reforms**; and (5) willingness to accept **monitoring**. Under the **ABA Standards § 9.32** (mitigation), a reprimand or stayed suspension with conditions is the proportional outer bound—**not** disbarment.

---

## VII. MITIGATION & REMEDIATION (ABA Standards § 9.32)

- **No prior discipline in federal court**;
- **Substantial pro bono/low-bono service** to these clients over ~10 years;
- **No selfish motive**—fees relate to work performed;
- **Timely, good-faith remedial actions**: arrears cured; foreclosure stopped;
- **Independent accounting, escrow, and interest** commitment;

- **A malpractice litigation case** which is set to resolve the fee dispute.

---

**VIII. PROPOSED CORRECTIVE CONDITIONS (IF ANY VIOLATION IS FOUND)**

1. **Public reprimand** or **short suspension stayed** upon compliance;
2. **Restitution/escrow** of any disputed amount with **interest** at Idaho statutory rate as determined in the State Court malpractice case;
3. **Mandatory CLE** (IOLTA/trust accounting; client communication);
4. **Practice monitor/auditor** or any other condition as the court may order.

These conditions protect the public and the courts while recognizing context and rehabilitation.


IX. Conclusion: 15 years ago the undersigned started law office with this goal set out in a framed picture: "With excellence, integrity, diligence, faith and effort, we serve all people, <u>regardless of their ability to pay</u>, in maintaining the liberties bestowed upon free Americans, expecting that as we do our best, we might expand our reach to all who need it."

   This approach is unique and has led to conflict with others working in the system who believe the poor don't perhaps deserve the same access to law that clients of means deserve. This approach was in the past appreciated, for which I was honored with several awards of professionalism. In addition my wife and I have raised 6 great and accomplished children, two of whom are outstanding lawyers, and all of which are a credit to their church and communities. To lose my kind of approach this lawyer and law firm take in the bankruptcy court and local community would greatly injure access and compassionate care for the poor in the District of Idaho.

   Finally consider this—Mr. Romriell was unable to pay his mortgage for over 10 years, and every time he needed help we stood up for him and his farm, which he still has. He stood to reap the benefit of a great bad faith claim that I was uniquely qualified to undertake, which I believe would have been a benefit to him of several million dollars, until misguided advice led him down a failing road.

   Without an attorney like me willing to help the financially damned, Mr. Romriell and his then wife would have never stayed in their home and been able to raise their children on a farm like they wanted. I'm glad that to have obtained this objective for them and regret

their loss of faith in me right at the end of a long road, but I do not deserve the recommended Draconian sanction.

## IX. RELIEF REQUESTED

Respondent respectfully asks the Court to:

1. **Grant an evidentiary hearing** under L.Civ.R. 83.5(b)(4)(C);

2. Permit **supplemental submissions** (accountant report, ledgers, communications, CLE certificates, proposed escrow order);

3. **Decline to adopt** the recommendation of disbarment; and

4. If discipline is imposed, order **proportionate, corrective measures** as outlined above.

**DATED:** November 4, 2025

_____/S?_____

Aaron J. Tolson

Attorney